# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WOOFBEACH, INC., ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> STEVE HOLLAND, Individually and ) <br> d/b/a BEACH FOR DOGS, BEACH FOR ) <br> DOGS AURORA, INC., and BEACH FOR ) <br> DOGS CORPORATION, ) <br> ) <br>     Defendants. ) <br> _____ ) <br> ) <br> STEVE HOLLAND, BEACH FOR ) <br> DOGS, BEACH FOR DOGS AURORA, ) <br> INC., and BEACH FOR DOGS ) <br> CORPORATION, ) <br> ) <br>     Counter-Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> WOOFBEACH, INC., ERIC WILSON, ) <br> and CHRISTINA WILSON, ) <br> ) <br>     Counter-Defendants. ) | Case No. 16-cv-10315 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

      In its Second Amended Complaint ("SAC") [55], Plaintiff Woofbeach, Inc. ("Woofbeach") brings suit against Steve Holland ("Holland") and three companies that Holland co-owns—Beach for Dogs, Beach for Dogs Aurora, Inc., and Beach for Dogs Corporation (the "Holland Companies")—for (1) trademark infringement in violation of the Latham Act, 15 U.S.C. § 1125(a); (2) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq*. ("UDTPA"); and (3) violation of the Illinois Consumer Fraud and Deceptive Trade

Practices Act, 815 ILCS 505/2 *et seq.* ("ICFA"). In their answer to Woofbeach's First Amended Complaint, [27], Holland and the Holland Companies counter-sued Woofbeach and its purported owners, Eric and Christina Wilson (the "Wilsons") for (1) a declaration that they have not violated the Latham Act; (2) a declaration that they have not violated the UDTPA; (3) breach of contract; (4) breach of fiduciary duty to partnership; and (5) breach of fiduciary duty to Holland. See [29] (First Amended Counterclaim). Although Holland and the Holland Companies did not re-plead these counterclaims in their answer to the SAC, see [60], they have informed the Court that they are proceeding with the counterclaims.

Currently before the Court are Holland and the Holland Companies' motion to dismiss Woofbeach's ICFA claim (Count III) for failure to state a claim [30] and Woofbeach and the Wilsons' motion to dismiss Holland and the Holland Companies' counterclaims [38]. For the reasons explained, below, Holland and the Holland Companies' motion to dismiss [30] is denied and Woofbeach and the Wilsons' motion to dismiss [38] is granted in part and denied in part. This case is set for status hearing on January 11, 2018.

**I.     Background**

In its SAC [55], Woofbeach alleges as follows. Woofbeach is an Illinois corporation that provides dog training and groom services. Beginning no later than 2012, Woofbeach began using the service mark Woofbeach, which became the Word Mark registration, and a graphic logo containing the silhouette of a dog and palm tree, which became the Woofbeach Design Mark registration. Woofbeach is the exclusive owner of the Woofbeach Word Mark and the Woofbeach Design Mark.

On May 1, 2015, Woofbeach filed an application for service mark protection with the United States Patent and Trademark Office ("USPTO") for the Woofbeach Design Mark. On the

2

same date, Woofbeach filed an application for service mark protection with the USPTO for the Woofbeach Word Mark.

On January 26, 2016, the USPTO issued U.S. Federal Registration 4891993 for the Woofbeach Design Mark. The Woofbeach Design Mark Federal Registration 4891993 is for dog training and grooming services and consists of the stylized wording "WOOFBEACH" placed below silhouettes of two palm trees and a dog.

On February 16, 2016, the USPTO issued U.S. Federal Registration 4900682 for the for the Woofbeach Word Mark. The Woofbeach Word Mark Federal Registration 4900682 is for dog training and groom services and consists of the word WOOFBEACH.

Woofbeach has used the Woofbeach Word Mark and the Woofbeach Design Mark in connection with providing dog training and grooming services at its storefronts in Batavia, Illinois since 2012, Geneva, Illinois since 2014, and South Elgin, Illinois since 2015.

Woofbeach became aware that Holland has been using the name "Beach for Dogs," in addition to a logo containing the name and a silhouette of a palm tree and a dog, in connection with dog training and dog grooming services in Wheaton, Illinois since mid-2015 and more recently in Naperville, Illinois. Woofbeach has never authorized Holland to use a name for dog training and dog grooming services which contains the word "beach" or a logo which contains the graphic elements of a silhouette of a dog and palm tree. Holland is a former customer of Woofbeach and was aware of the Woofbeach Word Mark and Woofbeach Design Mark.

In Count I of the SAC, Woofbeach alleges that Holland's actions constitute trademark infringement in violation of the Latham Act, 15 U.S.C. § 1225(a). Woofbeach alleges that Holland's use of the name "Beach for Dogs" and a logo containing a silhouette of a dog and palm tree infringe on the Woofbeach Word Mark and Woofbeach Design Mark. According to

the SAC, the "Beach for Dogs" name and related logo are confusingly similar to the Woofbeach Word Mark and Woofbeach Design Mark and Holland's ongoing use of the name and logo has caused and is likely to cause confusion in the minds of consumers as to the existence of a relationship between Woofbeach's dog training and grooming business and Holland's dog training and grooming business. Woofbeach alleges that, as a direct and proximate result of Holland's infringing and deceptive activities and the resulting confusion in the minds of the consuming public, Woofbeach has been and/or will be damaged and irreparably harmed. In particular, Woofbeach alleges that it will lose good will, suffer damage to its business reputation, and lose potential customers and sales.

In Counts II and III of the SAC, respectively, Woofbeach alleges that Holland has engaged in wrongful conduct that violates the UDTPA, 815 ILCS 510/2 *et seq.*, and the ICFA, 815 ILCS 505/2 *et seq*. In addition to its allegations that Holland used a name and logo that are confusingly similar to Woofbeach's, Woofbeach alleges on information and belief that Holland caused his personal cell phone number to be listed in certain Internet directories to appear next to listings for Woofbeach, to improperly direct potential customers for dog grooming and training services to him personally and to unlawfully trade on the good will of Woofbeach.

Holland and the Holland Companies bring counterclaims against Woofbeach and the Wilsons and in support thereof, alleges as follows. Steve Holland is the president and co-owner of Beach for Dogs Aurora, Inc. and Beach for Dogs, Corporation, which are both Illinois corporations. The Wilsons are the purported owners of Woofbeach.

The Holland Companies were formed at the beginning of 2015 to offer a variety of high quality services related to dog ownership, including dog training, grooming, boarding, and day care. They also sell food, treats, and grooming products. They have a strong social media

4

presence on Facebook, Instagram, Twitter, and other similar sites. Since their inception, the Holland Companies have used the name "Beach for Dog" and a logo of "a cartoon dog catching a Frisbee on a beach with a single tree in the background, and two birds in the sky, all situated on what appears to be a hill." [29] at 18.

On July 1, 2014, Holland and the Wilsons (collectively, the "Partners") entered into a Partnership Agreement ("Partnership Agreement") for a partnership known as "Woofbeach (the "Partnership"). Eric Wilson was President of Dog Training, Christina Wilson was President of Dog Grooming, and Holland was the Chief Financial Officer ("CFO") responsible for accounting and scaling the business.

Under the Partnership Agreement, the Partners made no initial contributions to the Partnership but agreed to split the ownership interest and all profits so that Holland and Eric Wilson would each receive 33.3% and Christina Wilson would receive 33.4%. However, "Holland would only receive his 33.3% ownership of the partnership after revenues of the partnership reached $90,000 in one month." [29] at 23. The Wilsons would each be liable for 33.3% and Holland was liable for 33.4% of the Partnership's costs. Each Partner would receive a permanent salary of $120,000 per year, which could only be changed by unanimous consent of the Partners. Dissolution of the Partnership and any amendments to the Partnership Agreement also required a unanimous vote.

On February 3, 2015, Holland received a letter from the Wilsons' attorney, Bazos, Freeman. The letter stated, "you are hereby notified that the Wilsons would like to dissolve [the] partnership" and "the business relationship between you and the Wilsons is hereby declared to be at an end." [29] at 19.

In Counterclaims I and II, respectively, Holland and the Holland Companies seek declarations that they have not violated the Latham Act, 15 U.S.C. § 1125(a), or the UDTPA, 815 ILCS 501/2 *et seq.* Counterclaim III alleges that the Wilsons breached the Partnership Agreement by unilaterally dissolving the Partnership. Counterclaim IV alleges that the Wilsons owed a fiduciary duty to the Partnership, which they breached by unilaterally dissolving the Partnership. Similarly, Counterclaim V alleges that the Wilsons, who took on "a managerial role in the partnership with respect to Holland," breached their fiduciary duty to Holland by unilaterally dissolving the partnership. [29] at 23-24.

## II. Legal Standard

The parties' motions to dismiss are both brought under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint" (and defendants' counterclaims) "must allege facts which, when taken as true, 'plausibly suggest that the [party] has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor" (or in the case defendants' counterclaims, in defendants' favor). *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The Court reads and assesses the plausibility of the complaint and the counterclaims as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

Woofbeach also moves to strike two of Holland and the Holland Companies' counterclaims under Rule 12(f). Motions to strike "are generally disfavored because they are often interposed to create a delay," but in certain cases they "can help the litigants clear away

irrelevant or redundant clutter." *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991); see also, *e.g.*, *Maes v. Folberg*, 504 F. Supp. 2d 339, 351 (N.D. Ill. 2007) (striking claim entitled "irreparable injury" because it was repetitive of other claims and unnecessary).

## III. Analysis

### A. Holland and the Holland Company's Motion to Dismiss

Holland and the Holland Companies move to dismiss Woofbeach's ICFA claim for failure to state a claim. ICFA is "a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). Generally, the elements of a claim for violation of ICFA are: "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015).

A plaintiff may allege either deceptive or unfair conduct (or both) under ICFA. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). A business practice "is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The conduct "must have misled a reasonable consumer … in light of the totality of the information made available to the plaintiff." *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *2 (N.D. Ill. Oct. 14, 2016) (citation and internal quotation marks omitted).

7

An ICFA claim based on deceptive conduct must satisfy the particularity requirements of Rule 9(b). See Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where, and how: the first paragraph of any newspaper story." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *7 (N.D. Ill. Oct. 6, 2015) (internal quotation marks omitted; citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). To satisfy Rule 9(b) based upon "information and belief," the plaintiff must show that the facts constituting fraud are not accessible to him, and provide the grounds for his suspicions. *United States ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1108 (7th Cir. 2014).

Holland and the Holland Companies allege that Woofbeach's ICFA claim is deficient under these standards because Woofbeach does not allege that Holland and the Holland Companies intended for Woofbeach (as opposed to the public) to rely on their allegedly deceptive conduct. Therefore, they argue, Woofbeach cannot satisfy the second element of an ICFA claim, reliance by the plaintiff on the defendant's deception.

The Court concludes that the ICFA claim contains sufficient allegations concerning reliance. "[N]on-consumer businesses are able to sue other businesses under [ICFA] if they are able to allege that the challenged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *ATC Healthcare Services, Inc. v. RCM Technologies, Inc.*, 192 F. Supp. 3d 943, 955 (N.D. Ill. 2016) (internal quotation marks and citation omitted). Thus, "'businesses have standing to sue under [ICFA] to redress competitive injury they suffer when other businesses deceive customers.'" *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011) (quoting *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987)).

Woofbeach alleges that Holland and the Holland Companies deceived consumers. Specifically, Woofbeach alleges: "Defendant Holland, on information and belief, has personally and intentionally misled consumers and prospective customers into believing the dog grooming and dog training services of Beach for Dogs are affiliated with Woofbeach and/or he has attempted to misdirect them to his business. Specifically, on information and belief he has caused his personal cell phone number to be listed in certain Internet directories to appear next to listings for Woofbeach." [55] at 7. Cf. *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc*., 546 N.E.2d 33, 41 (Ill. App. 1989) ("where plaintiff has alleged defendant published false information about its prices for services, plaintiff [competing car dealer] has alleged conduct which implicates consumer-protection concerns" and therefore "has standing to sue under the [ICFA]").

Holland and the Holland companies argue that this is insufficient under Rule 9(b) because Woofbeach does not "state the ground for [its] suspicions" that Holland was responsible for the listings. [41] at 6. However, Woofbeach does identify the basis for its beliefs. Woofbeach describes and attaches as an exhibit a "copy of Yahoo PowerListings Scan Results for an Internet search on Woof Beach, which generated listings including the personal cell phone number of Holland next to the name of Woofbeach, in addition to showing listings for Beach for Dogs which also displayed Holland's personal cell phone number." *Id*. Woofbeach also describes and attaches as an exhibit an "email received by one of the owners of Woofbeach, Inc. from a customer who tried to reach Woofbeach using the number which appeared next to Woofbeach's name in the Internet directory, but instead reached Holland personally who proceeded to offer services from Beach for Dogs" and a screenshot "showing the listing of Holland's personal cell phone number next to the Woofbeach name." *Id*. The Court agrees with

9

Woofbeach that "it can be reasonably inferred" from these exhibits "that [Holland] may have been involved" in placing his phone number on listings to Woofbeach's business name. [37] at 5. Further, whether Holland caused his phone number to be placed on Internet listings next to Woofbeach's name is a fact "not accessible to" Woofbeach at this early stage of the case, before discovery has been conducted. *Grenadyor*, 772 F.3d at 1108.

Woofbeach also alleges that Holland and the Holland Companies deceived consumers by using a name and logo that are confusingly similar to the Woofbeach Word Mark and Woofbeach Design Mark, which has caused and is likely to cause confusion in the minds of consumers as to the existence of a relationship between Woofbeach's dog training and grooming business and Holland's dog training and grooming business. Holland and the Holland companies argue that these allegations are insufficient because Woofbeach "fails to say how Defendants' name and logo are confusingly similar to Woofbeach's, show any intentional acts by Defendants, or even identify a single instance of actual confusion." [30] at 10. The Court disagrees. The SAC alleges that the Holland Companies' names are confusingly similar to Woofbeach because they use the word "beach" to advertise the same types of products and services in the same market, and that the Holland Companies' logo is confusingly similar to Woofbeach's because it "contains the graphic elements of a silhouette of a dog and palm tree." [55] at 5. The complaint alleges that Holland's intent to mislead consumers and prospective customers is shown by Holland, on information and belief, "caus[ing] his personal cell phone number to be listed in certain Internet directories to appear next to listings for Woofbeach." *Id*. at 7. And the complaint alleges that customers will be confused over Holland's use of a confusingly similar name and mark by erroneously believing that there is an affiliation between Woofbeach and the Holland companies. Woofbeach also provides a specific example of how the similarity in names

has caused confusion: "a screenshot of a Facebook message from a customer of Woofbeach who contacted the owners of Woofbeach about his confusion as to whether there was an affiliation between the businesses: '…I just saw a video on FB about a Beach Dog place opening soon in Naperville. Is this you guys??'" *Id.* at 8.

For these reasons, the Court denies Holland and the Holland Companies' motion to dismiss Woofbeach's ICFA claim.

### B. Woofbeach and the Wilsons' Motion to Dismiss and Strike

#### 1. Counterclaims for Declaratory Relief

In Counterclaims I and II, respectively, Holland and the Holland Companies seek declarations that they are not violating the Latham Act or the UDTPA. Woofbeach and the Wilsons moves to dismiss or strike these counterclaims on the basis that they are duplicative of the claims alleged in Woofbeach's SAC. Woofbeach and the Wilsons explain that "once the Court rules on the merits of Counts I and II of the [SAC], the question of whether [Holland and the Holland Companies] have violated 15 U.S.C. 1125(a) and 815 ILCS 510/2 will be resolved in its entirety," which would render the counterclaims "redundant under [Rule] 12(f)." [38] at 4.

The Court will strike Counterclaims I and II. Although "[t]he Declaratory Judgment Act allows a party to bring a lawsuit based on a reasonable apprehension that it will be sued," it is not "a vehicle for bringing counterclaims to a suit that has already been filed when those counterclaims mirror defenses already raised." *United States v. Saporito*, 684 F. Supp. 2d 1043, 1064 (N.D. Ill. 2010). Counterclaim I mirrors Holland and the Holland Companies' defense to Woofbeach's Latham Act claim, that they have not violated and will not violate 15 U.S.C. § 1125(a). Counterclaim II mirrors Holland and the Holland Companies' defense to Woofbeach's UDTPA claim, that they have not violated 815 ILCS 510/2. Thus, the counterclaims "merely

restate . . . issue[s] already before this Court." *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005). "'It is well settled that such repetitious and unnecessary pleadings should be stricken.'" *Id.* (quoting *Rayman v. Peoples Savings Corp.*, 735 F. Supp. 842, 851-52 (N.D. Ill. 1990); *Green Bay Packaging, Inc. v. Hoganson & Assoc., Inc.*, 362 F. Supp. 78, 82 (N.D. Ill. 1973)).

Holland and the Holland Companies argue that their declaratory relief counterclaims should not be stricken because Woofbeach is "free to dismiss" its Latham Act and UDTPA claims, which would deprive Holland and the Holland Companies of "relief from the uncertain[t]y of the controversy." [42] at 6. But Woofbeach could not dismiss its Latham Act or UDTPA claims without permission from the Court, because Holland and the Holland Companies have already filed answers to those claims. See [60] at 12-14; Fed. R. Civ. P. 41(a)(1)(A)(i) (allowing plaintiff to voluntarily dismiss action without a court order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment"). Woofbeach would need the Court's permission to dismiss the Latham Act and UDTPA claims, which the Court would grant only "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). If Woofbeach seeks to voluntarily dismiss its Latham Act and UDTPA claims, the Court will consider whether Holland and the Holland Companies' claims for declaratory relief should be reinstated.

### 2. Counterclaims for Breach of Contract and Breach of Fiduciary Duty

#### a. The Holland Companies and Woofbeach

Woofbeach and the Wilsons argue that the Holland Companies should be dismissed as counter-plaintiffs and Woofbeach should be dismissed as a counter-defendant in the counterclaims for breach of contract and breach of fiduciary duty (Counterclaims III, IV, and V)

because they have no connection to the Partnership Agreement on which the counterclaims are based.

The Court agrees. Counterclaims III, IV, and V are premised on the Wilsons' alleged breach of the Partnership Agreement by dissolving the Partnership without Holland's permission. The Partnership Agreement, which is attached as an exhibit to Holland and the Holland Companies' Counterclaims, see [29-1], is between the Wilsons and Holland, and no other parties.

The Holland Companies nonetheless argue that they are proper counter-plaintiffs in Counterclaims III, IV, and V because they and Holland "were required to expend considerable resources following the collapse of the Woofbeach Partnership" and therefore "have also been harmed by the Wilsons' breach of the Partnership Agreement." [42] at 7. But any alleged harm that the Holland Companies suffered is ultimately irrelevant, because the Holland Companies do not identify any facts or legal theories that would give them a right to enforce the Partnership Agreement or any fiduciary duties created by that contract. Cf. *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1207 (N.D. Ill. 2015) (under Illinois law, in order to be a third-party beneficiary of a contract "[i]t must appear from the relevant language that the contract provision at issue was made for the direct, not merely incidental, benefit of the third party").

Holland and the Holland Companies also argue that Woofbeach is properly named as a Counter-Defendant in Counts III, IV, and V because "the Woofbeach Partnership" that the Wilsons and Holland formed through execution of the Partnership Agreement "*is* the Woofbeach plaintiff" that Holland and the Holland Companies are counter-suing. [42] at 7. However, this allegation is not contained in the counterclaim. Instead, Holland alleges: "Plaintiff/Counterdefendant Woofbeach, Inc. purports to be a corporation organized under the

laws of the State of Illinois, with its principal place of business at 1840 Mill Street, Batavia, Illinois." [29] at 17. Further, Holland's assertion that Woofbeach is the Woofbeach Partnership contradicts the counterclaim's allegation that the Wilsons unilaterally dissolved the Partnership. [29] at 22, ¶ 47 and 24, ¶ 56. That dissolution is what allegedly gave rise to Holland's claims for breach of contract and breach of fiduciary duty.

For these reasons, the Holland Companies are dismissed as Counter-Plaintiffs and Woofbeach is dismissed as a Counter-Defendant from Counts III, IV, and V of the counterclaims.

### b. Holland

Woofbeach also argues that Holland's breach of contract claim is deficient. "Under Illinois law, 'the essential elements of a breach of contract are: (i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of contract by the defendant, and (iv) resultant injury to the plaintiff.'" *Cooke v. Jackson Nat'l Life Ins. Co.*, 243 F. Supp. 3d 987, 995 (N.D. Ill. 2017) (quoting *Batson v. Oak Tree, Ltd.*, 2 N.E.3d 405, 414 (Ill. App. 2013)). Woofbeach asserts that Holland's claims for breach of contract, as well as his contingent claims for breach of fiduciary duty, should be dismissed because Holland fails to allege that he performed his own obligations under the Partnership Agreement or that he was damaged by the Wilsons' alleged breach. According to Woofbeach, Holland "fail[s] to allege any facts, provide evidence or allege . . . whether there was ever any performance by Holland" under the Partnership Agreement or explain "how [Holland] was damaged" by the Wilsons' alleged breach. [38] at 7.

The Court concludes that Holland's pleadings, though rather sparse, are sufficient to state a counterclaim for breach of contract. As the Seventh Circuit has recently emphasized, "it is

manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Chapman v. Yellow Cab Cooperative*, -- F.3d --, 2017 WL 5494238, at *1 (7th Cir. Nov 16, 2017). Thus, Holland was not required "to allege . . . facts"—let alone "provide evidence"—supporting each element of its claim. [38] at 7. Instead, "[i]t is enough to plead a plausible claim, after which 'a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Id*. at *2 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007)); see also *Herron v. Meyer*, 820 F.3d 860, 863 (7th Cir. 2016) ("a complaint narrates a claim and need not supply the proof"). Ultimately, a plaintiff is required only to "include enough facts so that the right to relief is more than speculative and so that the defendant can prepare a defense." *Neumann v. Borg-Warner Morse Tec LLC*, 168 F. Supp. 3d 1116, 1122 (N.D. Ill. 2016) (citing *Twombley*, 550 U.S. at 555).

Holland's counterclaim is sufficient under these minimal standards. The counterclaim alleges that Holland and the Wilsons signed the Partnership Agreement and agreed, among other things, that a unanimous vote was required to dissolve the Partnership; that "[u]pon formation of the Woofbeach Partnership, Holland became the Chief Financial Officer responsible for accounting and scaling the business," [29] at 19; that the Wilsons breached the Partnership Agreement by unilaterally dissolving the Partnership; and that as a result Holland "sustained irreparable harm and damages," *id*. at 22. Although Holland does not detail what actions, if any, he performed under the Partnership Agreement (other than being ready and willing to perform as Chief Financial Officer) or detail the harm and damages he allegedly suffered, his allegations are sufficient to give the Wilsons "fair notice" of the nature of Holland's claim, *i.e.*, that the Wilson's breached the provision of the Partnership Agreement that required the unanimous vote of the three partners to dissolve the Partnership. *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940,

946 (N.D. Ill. 2016); see *also Elward v. Electrolux Home Products, Inc.*, -- F. Supp. 3d --, 2017 WL 3704842, at *2 (N.D. Ill. Aug. 28, 2017); cf. *Petri v. Gatlin*, 997 F. Supp. 956, 966 (N.D. Ill. 1997) (breach of contract claim is adequately plead where it provides "notice to the defendants of the nature of the plaintiff's claim," even where the plaintiff does not specifically allege that he performed his obligations under the contract, where "the hypothesis that the plaintiff[] fulfilled [his] contractual obligations is . . . consistent with the allegations in the complaint"). Therefore, the Court denies Woofbeach's motion to dismiss the breach of contract counterclaim.

## IV. Conclusion

For the reasons explained above, Holland and the Holland Companies' motion to dismiss [30] is denied and Woofbeach and the Wilsons' motion to dismiss [38] is granted in part and denied in part. This case is set for status hearing on January 11, 2018.

Dated: December 11, 2017

_____
Robert M. Dow, Jr.
United States District Judge